Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| JULIA FELIZ BARRERA<br><br>Parte Apelante<br><br>v.<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO Y DEPARTAMENTO DE EDUCACIÓN DE PUERTO RICO<br><br>Parte Apelada | TA2026AP00314 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de Arecibo<br><br>Civil núm.: AR2025CV01655<br><br>Sobre: Mandamus |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli.

Trigo Ferraiuoli, jueza ponente

## SENTENCIA

En San Juan, Puerto Rico, a 15 de junio de 2026.

Comparece ante nos, Julia Feliz Barrera (parte apelante o Feliz Barrera), por derecho propio y en *forma pauperis[2]* mediante recuso de apelación. En este, solicitó la revocación de la *Sentencia* dictada el 26 de febrero de 2026 por el Tribunal de Primera Instancia, Sala Superior de Arecibo (TPI). Por virtud del aludido dictamen, el TPI desestimó la *Demanda* de *Mandamus* instada contra el Departamento de Educación de Puerto Rico (parte apelada o Departamento de Educación).

Por los fundamentos que exponemos, **confirmamos** la *Sentencia* recurrida.

### I. Trasfondo fáctico y procesal

El 29 de agosto de 2025, Feliz Barrera, por derecho propio y en representación de sus hijos menores A.B.F. y S.B.F., presentó

---

[1] Mediante Orden Administrativa DJ-2025-063B emitida el 20 de abril de 2026 se enmendó la composición de los paneles.

[2] Junto al recurso, la Sra. Feliz Barrera incluyó una *Declaración de Indigencia (In forma pauperis)*. Evaluada la solicitud, emitimos una *Resolución* notificada el 9 de abril de 2026, mediante la cual se le autorizó su comparecencia como indigente, según solicitada. Véase, Entradas 2 y 4 del Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC TA).

una Demanda mediante la cual solicitó la expedición de un *mandamus* contra el Departamento de Educación de Puerto Rico.[3] En síntesis, alegó que sus hijos poseen diagnóstico de autismo, TDAH, apraxia del habla infantil y otras necesidades educativas especiales en un programa bilingüe, conforme a evaluaciones psicoeducativas y recomendaciones clínicas actualizadas. Adujo que, pese a múltiples querellas administrativas y a la existencia de evaluaciones aprobadas, el Departamento de Educación no había implementado los Programas Educativos Individualizados (PEI) ni provisto los servicios educativos y terapéuticos correspondientes. Además, sostuvo que dicha inacción privó a los menores de su derecho constitucional a la educación. Por ello, solicitó la expedición de un auto de *mandamus* para ordenar al Departamento de Educación proveer ubicación escolar adecuada, servicios educativos y terapéuticos, implementar las recomendaciones clínicas y conceder acomodos razonables a la madre durante los procesos administrativos.[4]

Posteriormente, el 24 de octubre de 2025, la parte apelante presentó una *Moción de Re-Radicación de Demanda Enmendada y Evidencia Aneja[sic],* mediante la cual reiteró las alegaciones de la demanda original y añadió que el Departamento de Educación tenía la obligación ministerial de garantizar la ejecución de los PEI, responder oportunamente a las comunicaciones y asegurar la participación de los padres en las reuniones del Comité de Programación y Ubicación (COMPU). Además, solicitó que el Departamento de Educación convocara una reunión de COMPU y activara la prestación de servicios bilingües, terapias y educación

---

[3] Véase, Entrada 1 del Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI).
[4] Entrada 1 SUMAC TPI.

domiciliaria mientras culminaba la transición escolar de los menores.[5]

Luego de varios trámites procesales, Feliz Barrera presentó diversos escritos y mociones suplementarias dirigidas a fortalecer el récord judicial y evidenciar el alegado patrón de incumplimiento del Departamento de Educación. Entre estas, presentó una *Moción Sometiendo Evidencia Adicional en Apoyo al Recurso de Mandamus,* mediante la cual alegó que los menores llevaban más de dieciocho (18) meses sin recibir educación ni servicios.[6] Asimismo, presentó varias mociones informativas relacionadas con las querellas administrativas activas ante el Departamento de Educación, alegadas demoras excesivas en el trámite administrativo y problemas en la coordinación de reuniones de COMPU y servicios terapéuticos.

Posteriormente, el 17 de diciembre de 2025, el Estado Libre Asociado de Puerto Rico (ELA) y el Departamento de Educación, por conducto del Departamento de Justicia de Puerto Rico, presentaron una Moción de Desestimación al amparo de la Regla 10.2 de Procedimiento Civil, 2 LPRA Ap. V., R. 10.2. En síntesis, alegaron que el foro primario carecía de jurisdicción sobre la materia, debido a que la controversia debía ventilarse inicialmente mediante el trámite administrativo correspondiente. Además, sostuvieron que la parte apelante no cumplió con los requisitos indispensables para la expedición del recurso de *mandamus,* ya que no identificó un deber ministerial claro, no acreditó requerimiento previo suficiente y contaba con remedios administrativos adecuados y eficaces en derecho.[7]

---

[5] Entrada 14 SUMAC TPI.
[6] Entrada 22 SUMAC TPI.
[7] Entrada 51 SUMAC TPI.

Ese mismo día, la parte apelante presentó otra *Moción Informativa* mediante la cual reiteró que el Departamento de Educación no había contestado varias comunicaciones, no había provisto las minutas solicitadas y mantenía a los menores sin educación especial, terapias, ni servicio conforme a sus PEI. Además, informó su rechazo a la Escuela Segunda Unidad Manuel Ruiz Gandía como ubicación alterna, por entender que no cumplía con las necesidades educativas, clínicas y lingüísticas de los menores. Por ello, solicitó que el Tribunal tomara conocimiento de la presunta inacción del Departamento y su deber ministerial de implementar los PEI vigentes.[8]

El 31 de diciembre de 2025, Feliz Barrera presentó una *Moción en Oposición a la Moción de Desestimación,* en la cual argumentó que la demanda sí cumplía con los requisitos aplicables al recurso de *mandamus* y que concurrían varias excepciones al requisito de agotamiento de remedios administrativos, particularmente por alegada dilación excesiva, daño irreparable y violación de derechos constitucionales. Además, sostuvo que el Departamento tenía conocimiento previo de las necesidades educativas y lingüísticas de los menores mediante minutas, acuerdos de mediación, evaluaciones y resoluciones administrativas, pero aun así no había implementado los servicios educativos y terapéuticos requeridos. Por ello, solicitó que se declarara No Ha Lugar la *Moción de Desestimación* y continuaran los procedimientos judiciales.[9]

Ese mismo día, la parte apelante presentó otra *Moción Informativa* mediante la cual informó que había radicado su oposición a la *Moción de Desestimación* y explicó que por errores tecnológicos se anejaban nuevamente dos resoluciones finales

---

[8] Entrada 53 SUMAC TPI.
[9] Entrada 60 SUMAC TPI.

emitidas en el año 2025, por el foro administrativo de Educación Especial, correspondientes a cada uno de los menores para que formaran parte del escrito en oposición.[10]

En cuanto al menor A.B.F., el 24 de mayo de 2025, el foro administrativo emitió una resolución final en la querella núm. QEE-2425-01-11-01006. En suma, el referido foro concluyó que el menor, quien posee diagnóstico de autismo, apraxia del habla infantil, retrasos de lenguaje y otras condiciones, requería una ubicación escolar especializada con currículo adaptado e instrucción principalmente en inglés. Asimismo, determinó que el Departamento de Educación no contaba con la ubicación ni con un maestro bilingüe conforme a las recomendaciones educativas y clínicas del menor. Por consiguiente, ordenó al Departamento proveer servicios relacionados recomendados en el PEI 2024-2025 y discutidos en las reuniones de COMPU, además de continuar las gestiones relacionadas con la ubicación escolar para el año académico 2025-2026. [11]

Por otro lado, respecto al menor S.B.F., el 3 de junio de 2025, el foro administrativo emitió una resolución final y orden en la querella núm. QEE-2425-01-01024. En síntesis, la querella solicitaba ubicación apropiada en enseñanza bilingüe, terapias y evaluaciones para el menor. Durante los procedimientos administrativos, las partes alcanzaron varios acuerdos relacionados con servicios de año escolar extendido, servicios relacionados y la firma del PEI correspondiente. A raíz de dichos acuerdos, el foro administrativo ordenó el cierre y archivo de la querella.[12]

Tras varias incidencias procesales, el 17 y 18 de febrero de 2026, la parte demandante presentó varias mociones informativas

---

[10] Entrada 61 SUMAC TPI.
[11] *Íd.*, anejo 6.
[12] *Íd.*, anejo 8.

ante el Tribunal de Primera Instancia relacionadas con el estado de los procedimientos administrativos de educación especial de ambos menores.[13] En esencia, informó que en los casos administrativos QEE-2425-01-06-02004 y QEE-2425-01-06-02005 se habían emitido resoluciones finales y órdenes por parte del foro administrativo de Educación Especial. Según alegó, dichas resoluciones concluían que el Departamento de Educación había incumplido sustancialmente órdenes administrativas previas relacionadas con la provisión de una educación pública gratuita y apropiada (FAPE)[14], servicios relacionados, ubicación escolar adecuada y recursos de apoyo para los menores.

Asimismo, la parte apelante sostuvo que las resoluciones administrativas ordenaban al Departamento proveer ubicación escolar en salón especial con maestra bilingüe, asistentes de servicio individualizados, terapias, evaluaciones y reuniones de COMPU para atender las necesidades educativas y lingüísticas de los menores. No obstante, alegó que el Departamento continuaba incumpliendo varias de dichas órdenes y que ello evidenciaba un patrón de incumplimiento en su deber ministerial de proveer servicios educativos adecuados. Por ello, solicitó que el Tribunal tomara conocimiento judicial de las resoluciones administrativas por entender que incidían directamente sobre las controversias pendientes en el pleito de *mandamus.*[15]

En ambas resoluciones, el Foro Administrativo concluyó que persistían controversias sobre la implementación efectiva de los PEI, la ubicación escolar, la provisión de servicios relacionados y los apoyos necesarios para garantizar una educación pública, gratuita y apropiada a los menores.[16]

---

[13] Entradas 70 y 74 SUMAC TPI.
[14] *Free Appropriate Public Education* por sus siglas en ingles.
[15] Entrada 76 SUMAC TPI.
[16] *Íd.*, anejos 1 y 2.

Surge de la Minuta de la vista argumentativa celebrada el 19 de febrero de 2026, que el Tribunal discutió con las partes el estado de los procedimientos administrativos relacionados con ambos menores y el alcance de la jurisdicción judicial en la controversia. Durante la vista, la representación legal del Departamento de Educación argumentó que existía un remedio adecuado en ley mediante las resoluciones administrativas emitidas y sostuvo que el Departamento ya había realizado varias gestiones dirigidas a cumplir con dichas órdenes, incluyendo la disponibilidad de salones, maestras y asistentes para ambos estudiantes. Por su parte, Feliz Barrera insistió en que persistía el incumplimiento de varias órdenes administrativas y reiteró su desacuerdo con la ubicación escolar ofrecida por el Departamento. Finalmente, el Tribunal dejó el asunto sometido para resolución escrita.[17]

El 26 de febrero de 2026, el TPI emitió su *Sentencia* mediante la cual desestimó la demanda de *mandamus* presentada por la Feliz Barrera. En síntesis, el foro primario concluyó que las controversias relacionadas con la ubicación escolar, implementación de los PEI y provisión de servicios educativos y terapéuticos formaban parte de un procedimiento administrativo especializado que requería evaluación técnica y discreción administrativa por parte del Departamento de Educación. Asimismo, resolvió que el ordenamiento jurídico proveía un remedio adecuado y eficaz mediante el trámite administrativo de educación especial y las resoluciones emitidas por el Foro Administrativo de Educación Especial, por lo que no procedía la expedición del recurso extraordinario de *mandamus.*[18]

Posteriormente, el 13 de marzo de 2026, la parte apelante presentó una *Moción de Reconsideración.* En síntesis, sostuvo que el

---

[17] Entrada 82 SUMAC TPI.
[18] Entrada 78 SUMAC TPI.

Tribunal erró al concluir que no existía un deber ministerial susceptible de compeler mediante *mandamus* y al determinar que el remedio administrativo había resultado adecuado y eficaz. Particularmente, argumentó que las resoluciones administrativas emitidas en los casos QEE-2425-01-06-02004 y QEE-2425-01-06-02005 contenían órdenes claras, específicas y finales dirigidas al Departamento de Educación, las cuales continuaban incumplidas. Además, alegó que el Departamento no presentó evidencia competente en el expediente judicial que acreditara el cumplimiento de dichas órdenes administrativas.[19]

El 24 de marzo de 2026, el foro de primera instancia emitió una *Resolución* mediante la cual declaró *No Ha Lugar* la moción de reconsideración. En esta, reiteró que la *Sentencia* desestimatoria no descansó sobre documentos que no formaban parte del expediente judicial, sino sobre la improcedencia del recurso de *mandamus* bajo las circunstancias del caso. Asimismo, resolvió que la existencia de resoluciones administrativas finales no convertía automáticamente su implantación en un deber puramente ministerial susceptible de compelerse mediante *mandamus,* pues la ejecución de dichas determinaciones formaba parte del esquema administrativo especializado dispuesto por ley. Además, reiteró que el ordenamiento jurídico proveía mecanismos adecuados y eficaces para implantar y ejecutar las determinaciones administrativas emitidas a favor de los menores.[20]

Inconforme con la determinación del TPI, el 26 de marzo de 2026, Feliz Barrera acudió ante este foro intermedio y alegó la comisión de los siguientes errores:

**Error Núm. 1**

Erró el Tribunal de Primera instancia al caracterizar el reclamo de la apelante como una impugnación de

---

[19] Entrada 81 SUMAC TPI.
[20] Entrada 84 SUMAC TPI.

determinaciones administrativas, cuando la apelante nunca impugnó dichas determinaciones y exclusivamente solicitó su ejecución.

### Error núm. 2

Erró el tribunal al concluir que existe un remedio adecuado y eficaz en el curso ordinario de la ley, cuando el foro administrativo cerró expresamente ambos expedientes por orden final y no dispone de mecanismo de ejecución post-cierre.

### Error Núm. 3

Erró el tribunal al concluir que el deber de cumplir con resoluciones finales no es ministerial, cuando dichas resoluciones contienen órdenes específicas, claras e ineludibles que no admiten discreción en su ejecución.

### Error Núm. 4

Erró el tribunal al concluir que el remedio administrativo fue adecuado y eficaz, cuando el propio estado admitió incumplimiento en sala y no existe en el expediente evidencia alguna de cumplimiento real con las órdenes emitidas.

(Mayúsculas en el original omitidas).

Por su parte, el 23 de abril de 2026, el Departamento de Educación, por conducto de la Oficina del Procurador General de Puerto Rico, presentó su oposición al recurso de apelación.[21]

Posteriormente, el 22 de mayo de 2026, la apelante presentó por derecho propio una *Moción suplementaria urgente para ejecución, consideración expedita y certificación de incumplimiento continuo para preservar el récord federal.*[22] Mediante esta, solicitó a este foro que ordenara al Estado Libre Asociado y al Departamento de Educación certificar por escrito la fecha de inicio, proveedor, modalidad, frecuencia, horario e idioma de la educación en el hogar o interina para ambos menores, así como el plan de implementación de los servicios previamente ordenados. Además, solicitó que cualquier falta de ejecución atribuida al Departamento no fuera

---

[21] Entrada 6 del Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC TA).

[22] Entrada 7 SUMAC TA. La referida moción fue presentada en inglés. No obstante, para facilitar la lectura del tracto procesal y conservar la uniformidad del idioma en esta Sentencia, resumimos su contenido en español.

utilizada en su contra como fundamento para imputarle falta de cooperación, incumplimiento, desacato o cualquier consecuencia adversa. Finalmente, expresó que la moción también tenía el propósito de preservar el récord para una posible revisión federal.[23]

Con el beneficio de la comparecencia de ambas partes, resolvemos.

## II. Exposición del Derecho

### A. La Regla 10.2 de Procedimiento Civil

La Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, permite que un demandado en una demanda, reconvención, demanda contra coparte, o demanda contra tercero, solicite al tribunal la desestimación de las alegaciones en su contra. La mencionada regla establece lo siguiente:

Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva **excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada:**

(1) falta de jurisdicción sobre la materia;
(2) falta de jurisdicción sobre la persona;
(3) insuficiencia del emplazamiento;
(4) insuficiencia del diligenciamiento del emplazamiento;
**(5) dejar de exponer una reclamación que justifique la concesión de un remedio;**
(6) dejar de acumular una parte indispensable.

*Íd.* (Énfasis suplido).

A los fines de disponer de una moción de desestimación por el fundamento de que la demanda no expone una reclamación que justifique la concesión de un remedio, los tribunales vienen obligados a tomar como ciertos todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente, y considerarlos de la manera más favorable a la parte demandante. *Saint Mary Investment, LLC v. Denton Morales y otros,*

---

[23] Entrada 7 SUMAC TA.

2026 TSPR 35, 218 DPR ___ (2026); *Costas Elena y otros v. Magic Sport y otros,* 213 DPR 523, 533 (2024); *Eagle Security v. Efrón Dorado et al,* 211 DPR 70, 78 (2023); *Cobra Acquisitions v. Mun. de Yabucoa et al.,* 210 DPR 384, 396 (2022); *Rivera Sanfeliz et al. v. Jta. Dir. FirstBank,* 193 DPR 38, 49 (2015); *Colón Rivera et al. v. ELA,* 189 DPR 1033, 1049 (2013).

Dentro del ejercicio de su discreción, el foro primario no deberá desestimar la demanda a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación. *Consejo de Titulares v. Gómez Estremera et al.*, 184 DPR 407, 423 (2012); *Pressure Vessels P.R. v. Empire Gas P.R.*, 137 DPR 497, 505 (1994). Es decir, la desestimación procede cuando de los hechos bien alegados en la demanda no se puede identificar una relación entre los hechos alegados y el derecho sustantivo que genera la responsabilidad del demandado hacia el demandante. *Torres, Torres v. Serrano Torres,* 179 DPR 481, 501 (2010).

Cónsono con lo anterior, a pesar de interpretar liberalmente la demanda, corresponde la desestimación si no hay remedio alguno disponible en nuestro estado de derecho. *Ortiz Matías et al. v. Mora Development,* 187 DPR 649, 654 (2013).

Por consiguiente, es necesario considerar si, a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de éste, la demanda es suficiente para constituir una reclamación válida. *Saint Mary Investment, LLC v. Denton Morales y otros,* supra; *Costas Elena y otros v. Magic Sport y otros,* supra, pág. 534; *Eagle Security v. Efrón Dorado et al,* supra, pág. 78; *Cobra Acquisitions v. Mun. de Yabucoa et al.,* supra, pág. 396; *Pressure Vessels P.R. v. Empire Gas P.R.*, supra, pág. 505.

Así pues, para que un demandado prevalezca cuando presente una moción de desestimación al amparo de la Regla 10.2

(5), *supra,* debe establecer con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que pueda probarse en apoyo a su reclamación, aun interpretando la demanda de la forma más liberal posible a su favor. *Costas Elena y otros v. Magic Sport y otros,* supra, pág. 534.

### B. Recurso de *Mandamus*

El Código de Enjuiciamiento Civil de Puerto Rico de 1933 reconoce el auto de *mandamus* como un recurso extraordinario, de naturaleza "altamente privilegiada" y discrecional, mediante el cual se solicita al tribunal que ordene a una persona natural, una corporación o un foro judicial inferior cumplir un acto comprendido dentro de sus atribuciones o deberes. Art. 649 del Código de Enjuiciamiento Civil de Puerto Rico de 1933, 32 LPRA sec. 3421. *AMPR v. Srio. Educación, E.L.A,* 178 DPR 253, 263 (2010). Dicho recurso procede para compeler el cumplimiento de un deber ministerial; es decir, un deber impuesto por ley que no admite discreción en su ejercicio, sino que tiene carácter mandatorio e imperativo. *Kilómetro 0 v. Pesquera López,* 207 DPR 200, 214 (2021); *Romero, Valentín v. Cruz, CEE,* 205 DPR 972, 985 (2020); *Noriega v. Hernández Colón,* 135 DPR 406, 448 (1994). En otras palabras, el *mandamus* no procura una directriz general ni una autorización para actuar, sino un mandato específico que la parte demandada no tiene opción de desobedecer. *Carrasquillo Román v. Inst. Correccional,* 204 DPR 699, 713 (2020). Por ello, la procedencia del recurso depende del carácter del acto que se pretende compeler. A*cevedo Vilá v. Aponte Hernández,* 168 DPR 443, 454 (2006).

En cuanto a sus requisitos procesales, la Regla 54 de Procedimiento Civil, dispone que el auto de *mandamus*, ya sea perentorio o alternativo, podrá obtenerse mediante la presentación de una solicitud jurada. 32 LPRA Ap. V, R. 54. Dicha regla permite que el tribunal conceda el remedio de forma perentoria cuando el

derecho a exigir la ejecución inmediata de un acto sea evidente y no surja excusa válida para incumplirlo. *Íd.* De ordinario, para que proceda el recurso, la parte promovente debe demostrar que hizo un requerimiento previo y que este no fue debidamente atendido por el demandado. *Romero, Valentín v. Cruz, CEE,* supra, pág. 985; *AMPR v. Srio. Educación, E.L.A.,* supra, pág. 267.

Ahora bien, el *mandamus* no procede cuando la parte peticionaria tiene disponible un recurso adecuado y eficaz en el curso ordinario de la ley. Art. 651 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3423. Sin embargo, cuando la parte peticionaria prueba la existencia de un deber ministerial y su incumplimiento, le corresponde al funcionario demostrar que la concesión del auto afectaría negativamente un interés público mayor o que le resulta imposible cumplir. *AMPR v. Srio. Educación, E.L.A.,* supra, págs. 269-270. Finalmente, al evaluar la procedencia del *mandamus*, los tribunales deben considerar el impacto del recurso sobre los intereses públicos involucrados, la posible intromisión indebida en las gestiones de la Rama Ejecutiva y el efecto sobre los derechos de terceros. *Kilómetro 0 v. Pesquera López,* supra, pág. 215; *Romero, Valentín v. Cruz, CEE,* supra, pág. 972, citando a *Noriega v. Hernández Colón,* supra, pág. 448; *Bhatia Gautier v. Gobernador,* 199 DPR 59, 75 (2017).

### C. Derecho a la Educación y Servicios de Educación Especial

La Sección 5 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico reconoce que toda persona tiene derecho a una educación dirigida al pleno desarrollo de su personalidad y al fortalecimiento del respeto a los derechos del ser humano y a las libertades fundamentales. Art. II, Sec. 5, Const. ELA, LPRA, Tomo 1. El derecho a la educación ocupa el más alto rango constitucional en nuestro ordenamiento jurídico. *Declet Ríos v. Departamento de*

*Educación*, 177 DPR 765, 773 (2009); *Orraca López v. ELA*, 192 DPR 31, 40 (2014). En atención a su importancia, el Tribunal Supremo ha expresado que la educación de los menores no constituye un fin público cualquiera, sino uno de los fines más importantes del Estado. *Asoc. Maestros P.R. v. Srio. Educación,* 137 DPR 528, 601 (1994). De igual forma, ha señalado que este derecho reviste tal importancia que los miembros de la Asamblea Constituyente incluyeron "el afán por la educación" como uno de los factores determinantes de nuestra vida democrática. *AMPR v. Srio. Educación, E.L.A.*, 178 DPR 253, 270 (2010).

Conforme a ese mandato constitucional, la Asamblea Legislativa aprobó la intitulada *Ley de Reforma Educativa de Puerto Rico*, Ley Núm. 85-2018, con el propósito de estructurar el Sistema de Educación Pública sobre principios dirigidos a reconocer al estudiante como la razón de ser del sistema educativo. 3 LPRA sec. 9801-9816c. Entre esos principios, la Ley Núm. 85-2018 dispone que los estudiantes deben recibir una educación integral que atienda sus intereses y satisfaga sus necesidades particulares, incluido su bienestar físico, emocional y mental. Art. 1.02(d), 3 LPRA sec. 9801a. Asimismo, dicha ley reconoce que el Estado tiene la responsabilidad de garantizar que los recursos y el personal del sistema educativo cuenten con el compromiso y la responsabilidad social necesarios para alcanzar una educación de excelencia. *Íd.*

Respecto a las personas con impedimentos, el Tribunal Supremo ha reconocido el desarrollo de medidas afirmativas dirigidas a incorporarlas a la comunidad, entre ellas, el reconocimiento de su derecho a recibir y reclamar judicialmente educación remedial. *Bonilla v. Chardón,* 118 DPR 599, 605-606 (1978). En el ámbito federal, el Congreso aprobó la legislación conocida actualmente como *Individuals with Disabilities Education Improvement Act* (IDEA), 20 USCA 1400 et seq., en adelante Ley

IDEA, con el propósito de asegurar que los menores con impedimentos reciban una educación pública, gratuita y apropiada *(free appropriate public education)*, diseñada para atender sus necesidades específicas. *Orraca López v. ELA,* 192 DPR 31, 42 (2014).

Así, la Ley IDEA dispone que el término *free appropriate public education* (FAPE) abarca todo tipo de servicio educativo, ofrecido desde educación prescolar hasta secundaria, provisto a expensas de los fondos públicos y bajo la supervisión de la agencia pública encargada de dirigir los asuntos educativos. Añade que para que los servicios educativos se entiendan apropiados, es indispensable que se ajusten al programa educativo individualizado (PEI)[24] de cada estudiante. 20 USCA 1401(9).[25] Véase, además, *Code of Federal Regulations*, en adelante, el Reglamento Federal, 34 CFR sec. 300.17.

A esos efectos, dicha legislación habilita un programa de enseñanza individualizado para cada estudiante de educación especial, enfocado en sus necesidades particulares y sin costo para sus padres, con el objetivo de brindarles la oportunidad de prepararse para una vida independiente. *Orraca López v. ELA,* supra; 20 USCA sec. 1400 (d)(1)(A). Por tal razón, cualquier Estado que reciba fondos bajo el referido estatuto deberá asegurar que cualquier reglamentación o política estatal sean de conformidad con los propósitos de la Ley IDEA. 20 USC sec. 1407(a).

---

[24] El Reglamento Federal define el programa educativo individualizado (PEI) como un documento escrito designado a un niño con discapacidad que se elabora, examina y revisa de conformidad con los artículos 300.320 a 300.324 del Reglamento. 34 CFR sec. 300.22.

[25] "(9) Free appropriate public education. The term "free appropriate public education" means special education and related services that--
　　(A) have been provided at public expense, under public supervision and direction, and without charge;
　　(B) meet the standards of the State educational agency;
　　(C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and
　　(D) are provided in conformity with the individualized education program required under section 1414(d) of this title."

En armonía con la legislación federal, Puerto Rico promulgó la Ley Núm. 51-1996, conocida como la *Ley de Servicios Educativos Integrales para Personas con Impedimentos,* para ratificar el derecho de las personas con impedimentos a recibir una educación pública, gratuita y conforme a sus necesidades. 18 LPRA sec. 1351 et seq.

Como parte de la declaración de política pública, dicho estatuto dispone, en su Artículo 3 sec. 1352, que el Estado debe garantizar, hasta donde sus recursos lo permitan, una educación pública, gratuita y apropiada en el ambiente menos restrictivo posible, ajustada a las necesidades individuales del estudiante, y acompañada de los servicios relacionados. Además, reconoce la importancia de identificar, localizar, registrar y evaluar a las personas con posibles impedimentos desde el nacimiento hasta los veintiún (21) años; diseñar un Programa Educativo Individualizado (PEI); proteger la confidencialidad de la información; proveer un sistema sencillo, rápido y justo de ventilación de querellas; asegurar la participación de los padres en la toma de decisiones en todo proceso relacionado con sus hijos, entre otros. 18 L.P.R.A. sec. 1352. La misma ley dispone que sus garantías aplican tanto a las escuelas del Departamento de Educación, como a las Escuelas de la Comunidad bajo la supervisión del Instituto de Reforma Educativa.

A tenor con la Ley Núm. 51-1996, supra, el 20 de julio de 2020, el Departamento de Estado aprobó el *Manual de Procedimientos de Educación Especial* del 2020. En lo pertinente al caso de epígrafe, el aludido manual establece que el PEI recoge las necesidades académicas y funcionales del estudiante, así como los servicios educativos, relacionados y suplementarios que el Departamento se compromete a ofrecerle para garantizar una educación pública, gratuita y apropiada. Sección 7.1 del *Manual de Procedimientos de Educación Especial,* pág. 65.

En cuanto al proceso de ubicación, el Manual distingue entre la determinación de la alternativa de ubicación y la identificación de la localización donde esta se implementará. Sección 8.2 del *Manual de Procedimientos de Educación Especial,* págs. 80-81. Sobre la selección, el Manual dispone que el Departamento de Educación debe analizar alternativas de ubicación apropiadas de acuerdo con el PEI de cada estudiante. A esos efectos, la localización de alternativas de ubicación es el proceso que realiza el funcionario del COMPU[26] que representa al Departamento de Educación y a la Oficina Regional Educativa (ORE) para identificar las escuelas donde esté disponible la alternativa de educación recomendada en el PEI. Sección 8.3 del Manual de Procedimientos de Educación Especial, págs. 90. Si el Departamento no tiene disponible la alternativa recomendada, puede identificar la escuela privada para comprar el servicio educativo a costo público. No obstante, la determinación de aprobar o rechazar una compra de servicios educativos corresponde al Secretario Asociado de Educación Especial. *Íd.*, pág. 91.

Ahora bien, cuando los padres no están de acuerdo con la ubicación o localización recomendada por el Departamento de Educación, la Sección 29 del Manual reconoce varios mecanismos para canalizar su objeción. En primer lugar, los pares tienen derecho a participar activamente en la reunión del COMPU donde se discute la ubicación más apropiada para implementar el PEI del menor. Además, pueden recibir orientación sobre la ubicación recomendada, su currículo y el programa de clases correspondientes. Una vez el COMPU aprueba la ubicación, el Departamento debe presentar las localizaciones disponibles en el

---

[26] En la Ley IDEA, se refiere al Comité de PEI o "IEP team" por su término en inglés.

municipio del estudiante o, de no estar disponibles, en su región educativa.

Asimismo, los padres tienen derecho a visitar las localizaciones recomendada y, dentro del término de diez (10) días escolares desde su presentación, volver a reunirse con el COMPU para discutir sus observaciones. Finalmente puede aceptar o rechazar la ubicación recomendada por el Departamento y, si no están de acuerdo con la ubicación o localización propuesta, solicitar mediación previa o iniciar el proceso de querella administrativa. Sección 29 del *Manual de Procedimientos de Educación Especial*, págs. 346-347.

El procedimiento de querella, además de lo dispuesto en este Manual, se rige por el *Reglamento del procedimiento de querellas de educación especial y pago de honorarios de abogados*, Reglamento Núm. 9168 de 26 de febrero de 2020. En particular, el Artículo 6 del Reglamento Núm. 9168 establece el cauce administrativo disponible para los padres, madres, tutores o encargados que no estén conformes con alguna acción, inacción o determinación del Departamento de Educación relacionada con la identificación, localización, registro, elegibilidad, evaluación, ubicación, presentación de servicios educativos o relacionados servicios educativos o relacionados, servicios de apoyo, o la provisión de una educación pública, gratuita y apropiada.

Conforme a dicho procedimiento, el Departamento debe contestar la querella e incluir las razones para denegar el remedio solicitado, las alternativas consideradas por el COMPU, los documentos utilizados para tomar la determinación y cualquier otro factor relevante evaluado por la agencia. *Íd.*, pág. 10.

Por su parte, el Artículo 9 (f) del Reglamento Núm. 9168 dispone que toda orden o resolución emitida por un juez administrativo, durante o posterior a la celebración de la vista

administrativa, deberá constar por escrito, estar fundamentada en la prueba presentada y en el expediente, fijar una fecha cierta para su cumplimiento y, de ser posible, identificar a la persona o funcionario obligado a ejecutarla.

Finalmente, sobre los procedimientos posteriores a la emisión de la resolución final, el Reglamento Núm. 9168, conforme a establecido en la Ley IDEA y el Reglamento Federal, dispone que la resolución final resuelve todas las controversias pendientes y ordena el cierre y archivo de la querella, por lo que no procede reconsideración ante el foro administrativo. No obstante, la parte perjudicada podrá acudir en revisión judicial ante el Tribunal de Apelaciones dentro del término de treinta (30) días o instar una acción civil ante el foro federal o estatal dentro del término de noventa (90) días. *Íd.,* pág. 36-37. Véase, además, 20 USCA sec. 1415 (i)(1)(A); 34 CFR sec. 300.514(a).

### III.    Aplicación del Derecho a los Hechos

Por su estrecha relación, discutiremos los *cuatro señalamientos de error* en conjunto. En suma, la apelante sostiene que el TPI erró al desestimar la demanda de *mandamus* porque, a su juicio, no pretendía impugnar las resoluciones administrativas emitidas por el Foro Administrativo de Educación Especial, sino exigir su cumplimiento. Además, plantea que el cierre de los expedientes administrativos la dejó sin remedio adecuado y eficaz; que las resoluciones finales contenían órdenes claras y ministeriales; y que el Estado reconoció incumplimientos sin que existiera prueba suficiente de cumplimiento en el expediente. Por tanto, nos corresponde determinar si el foro primario incidió al concluir que el *mandamus* no era el mecanismo procesal adecuado para atender el reclamo presentado.

Evaluado el expediente ante nuestra consideración, adelantamos que *no le asiste la razón* a la apelante. Es cierto que la apelante insiste en que no pretendía impugnar las resoluciones administrativas emitidas a favor de los menores A.B.F. y S.B.F., sino exigir su cumplimiento. No obstante, aunque su reclamo se caracterice como uno de ejecución, el *mandamus* no procede cuando el ordenamiento jurídico provee un remedio adecuado y eficaz para atender la controversia. Por tanto, el punto medular no es únicamente determinar si la apelante procuraba revisar o ejecutar las resoluciones administrativas, sino si el recurso extraordinario de *mandamus* era el mecanismo procesal apropiado para obtener el remedio solicitado. *Veamos.*

En este caso, el propio trámite administrativo demuestra que el procedimiento administrativo especializado establecido por la Ley IDEA, la Ley Núm. 51-1996 y sus reglamentos fue activado y produjo determinaciones finales. La apelante presentó querellas administrativas relacionadas con la ubicación, los servicios educativos, los servicios relacionados y la implementación de los PEI de ambos menores. El foro administrativo de Educación Especial celebró procedimientos, examinó los reclamos, emitió resoluciones finales y ordenó remedios concretos. Es decir, el foro especializado atendió las controversias sustantivas vinculadas con los derechos educativos reclamados. Ante ese cuadro, el foro de primera instancia no erró al reconocer que existía un cauce administrativo especial diseñado precisamente para atender controversias de educación especial.

El hecho de que el foro administrativo haya emitido órdenes específicas no elimina el carácter extraordinario del mandamus ni desplaza los remedios ordinarios disponibles para la ejecución de determinaciones administrativas finales. Si bien el cierre y archivo de los expedientes administrativos culminó la etapa adjudicativa

ante la agencia, ello no implicó que la apelante se quedara sin remedio. En efecto, la ejecución de una resolución administrativa final tiene un cauce procesal distinto al de la revisión judicial y puede procurarse mediante una acción judicial ordinaria de ejecución. Por tanto, si una parte entiende que una orden administrativa final no ha sido cumplida, el remedio ordinario consiste en acudir al tribunal competente para solicitar su ejecución, no en utilizar el *mandamus* como sustituto de ese procedimiento. De ese modo, la premisa de la apelante —que el cierre de los expedientes administrativos dejaba al *mandamus* como único remedio disponible— no es correcta, pues el cierre de la querella no extingue los mecanismos judiciales ordinarios para exigir cumplimiento ni convierte automáticamente el *mandamus* en el remedio procedente.

Cabe considerar que, como foro apelativo, tomamos conocimiento judicial de que actualmente se encuentra pendiente ante el foro primario el caso AR2026CV00474[27], relacionado con la ejecución de las resoluciones administrativas objeto de controversia, hecho que fue informado y acreditado por la parte apelada durante el trámite de este recurso. En esa acción, el Estado Libre Asociado de Puerto Rico y el Departamento de Educación acudieron al foro de primera instancia para solicitar que se hicieran cumplir la Minuta y Orden de 23 de octubre de 2025, así como las resoluciones administrativas finales emitidas el 13 y 20 de enero de 2026. Dicha acción confirma que el ordenamiento provee un mecanismo

---

[27] Cita en el recurso: "El caso AR2026CV00474 inició con una *Petición Para Hacer Cumplir Resolución y Orden Administrativa* presentada por el Departamento de Educación el 18 de marzo de 2026. De ese modo, el Departamento de Educación solicitó que se exija a la apelante cumplir con la Orden del 23 de octubre de 2025 emitida por el foro administrativo en el caso QEE-2425-01-06-02004, así como con las administrativas finales y firmes de los casos QEE2425-01-06 02004 y QEE2425-01-06-02005 y, en consecuencia, se le ordene matricular a los menores en la Escuela Segunda Unidad Manuel Ruiz Gandía de Arecibo y a participar activamente del proceso y las reuniones del COMPU Ent. #1 de AR2026CV00474, pág. 7. Dos días antes de la presentación de esta apelación, la apelante, presentó en el caso AR2026CV00474 su *Moción en Oposición a Petición de Ejecución y Solicitud de Desestimación*. Ent. #6 de AR2026CV00474." Entrada 6 SUMAC TA, pág. 28, nota al calce núm.103.

ordinario para poner en vigor las determinaciones administrativas finales. Por tanto, no era necesario mantener viva una demanda de *mandamus* cuando ya existía un cauce judicial ordinario disponible para atender la ejecución de las órdenes administrativas.

Por otro lado, aunque las resoluciones administrativas contienen órdenes particulares, su cumplimiento no se reduce a un acto puramente mecánico o ministerial. Las órdenes relacionadas con ubicación escolar, servicios de educación especial, reuniones de COMPU, asistentes, terapias, plan de transición y coordinación de servicios requieren la intervención de funcionarios especializados, participación de los padres, procesos de matrícula, coordinación institucional y determinaciones propias del marco regulatorio de educación especial.

Tampoco nos persuade el planteamiento de que el TPI debía mantener viva la demanda porque el Estado admitió incumplimiento en sala y no existía evidencia suficiente de cumplimiento en el expediente. Aun si existía controversia sobre el grado de cumplimiento de las resoluciones administrativas, dicha controversia podía atenderse en el procedimiento ordinario de ejecución de orden administrativa, en el cual el tribunal puede evaluar prueba, requerir cumplimiento, utilizar mecanismos de ejecución y, de ser necesario, imponer medidas coercitivas.

De hecho, la Minuta de la vista argumentativa refleja planteamientos contrapuestos sobre el cumplimiento. La representación del Departamento de Educación alegó que existían recursos disponibles, tales como salón, maestra y asistentes, y que restaban gestiones que requerían la matrícula de los menores y la participación de la madre en el COMPU. La apelante, por su parte, sostuvo que dichas gestiones no satisfacían lo ordenado y que la ubicación propuesta no cumplía con los PEI. Esa controversia

evidencia la necesidad de un procedimiento ordinario de ejecución y no la procedencia automática de un *mandamus*.

A lo anterior se suma que el caso involucra un esquema normativo complejo compuesto por la Ley IDEA, la Ley Núm. 51-1996, el Reglamento Núm. 9168 y el Manual de Procedimientos de Educación Especial, entre otros. Dicho marco regula la identificación, evaluación, ubicación, revisión de PEI, participación de los padres, querellas administrativas, resoluciones finales y remedios posteriores. Ante una controversia de esta naturaleza, el TPI actuó correctamente al no convertir el recurso extraordinario de *mandamus* en un mecanismo paralelo para supervisar la implantación de servicios educativos especializados.

Ciertamente, el derecho a la educación de los menores está revestido del más alto interés público, al igual que la obligación del Departamento de Educación de proveer una educación pública, gratuita y apropiada. No obstante, ello no exime a la parte promovente de cumplir con los requisitos del *mandamus* ni autoriza su uso cuando existen remedios ordinarios disponibles. Precisamente por la relevancia de los derechos implicados, el ordenamiento ha diseñado procedimientos especializados y mecanismos judiciales de ejecución para asegurar el cumplimiento de las determinaciones administrativas finales.

En conclusión, aun aceptando que la apelante no procuraba impugnar las resoluciones administrativas, ello no demuestra que el TPI haya errado al desestimar la demanda. Al evaluar las alegaciones de la manera más favorable para la parte demandante, el foro primario podía concluir que no procedía el recurso extraordinario de *mandamus*, pues de la propia reclamación surgía la existencia de remedios ordinarios adecuados para procurar la ejecución de las resoluciones administrativas finales. Además, las controversias relacionadas con la educación especial están sujetas

a un esquema especializado que contempla mecanismos adecuados para su atención. Por tanto, resolvemos que los errores señalados no se cometieron, toda vez que la determinación del foro primario es compatible con la naturaleza excepcional del *mandamus*. En consecuencia, procede confirmar la Sentencia apelada.

### IV.    Parte Dispositiva

Por los fundamentos que anteceden, procede *confirmar* la Sentencia apelada.

Notifíquese.

Lo acuerda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís<br>
Secretaria del Tribunal de Apelaciones